Free 090501, Westfield Insurance Company, NL, owned by Roland Kuski v. Birkey's Farm Store, Inc. and CNH America, appellees by Garrett, Vang, and Troy Lundquist. Your honors, may it please the court, counsel, my name is Roland Kuski and I represent Westfield Insurance Company. This case is before this court under Illinois Supreme Court rule 304. This case is essentially about a defective tractor that caught fire, and it's about the damages that that fire caused. We're here today because the trial court dismissed all of the claims, both in tort and contract, against the tractor dealer, Birkey's Farm Store. The court also dismissed all of the tort claims against the manufacturer, Case IH. In the end, this appeal involves two essential questions. One, does a farm have the right to sue a manufacturer for a defective tractor that catches fire and destroys other property? And two, does a farm have the right to sue a dealership in tort and contract when the dealership created the defect? And that fire caused damages to other property. We think that the answer to both of those questions is yes. Although the underlying facts in this case are relatively simple, they're somewhat important, the outcome of this appeal. In 2006, Westfield Insured, Gary Sandrock and Sandrock Farms, needed a tractor and they went looking for one and they went to Birkey's Farm Store. In February of that year, they bought a tractor, a brand new Case IH tractor from the farm store. And that original negotiation with the farm store included value, price, options, specifications for the tractor. In the days following that original bargain, Birkey's called the farm and said, we can't find a tractor with these exact specifications. What we can give you is a tractor that also includes a GPS and an auto-steering assembly. Now, at the time, these GPS and auto-steering assembly units cost somewhere in the range of between $10,000 to $12,000. And as a result, they said, this wasn't an option we negotiated, we want more money. And the farm refused. Ultimately, the dealership agreed to throw in the GPS at no cost to the farm. In addition to the GPS, the tractor and auto-steering assembly, Birkey's also gave the farm a warranty. The warranty document is a document that, though it reports that it's from C&H America, it sets forth the obligations of not only the farm and the manufacturer, but it also sets forth certain obligations for the dealer. And in fact, the dealer is a signatory to that warranty. Shortly after the tractor was delivered, it went right back to the shop. Repair orders that were attached to the pleadings show that between April and September of 2006, this tractor was back in the shop on at least seven different dates. Approximately six months after the delivery of the tractor, the tractor suddenly and catastrophically failed in a field while it was being used to pull a mulch ripper. The farm hand that was driving the tractor noticed flames coming up from under the hood. There weren't any warning lights. There weren't any signals. He immediately shuts off the tractor and tries to extinguish the fire, but he couldn't do it. So he calls for help. Other farm hands come over, including Gary Sandrock. They can't get the fire out. Ultimately, the fire department has to do it, but the tractor is terribly damaged in the process. In addition, other items of property, which we contend constitute other property under Illinois law, were also destroyed in the fire. Certainly the most contested item is the GPS and auto steering assembly. But we know from talking to the people at the farm that additional items, a CB radio, an antenna... Who owned those items? The farm owned those items. Various hand tools, a grease gun. Additional tractor parts and equipment that were not installed on the tractor, but were installed in the cab of the tractor. In addition to these items of other property, some of the farm hands sustained minor personal injuries, though we concede that no claims for personal injuries were filed. Given these facts, this appeal, I believe, boils down to essentially two main points. The first issue is whether the tractor fire caused damage to other property within the meaning of Mormon. The second issue is whether the contract claims should have been allowed under these circumstances against the farm store. With regard to this first issue, the damages issue, we contend that the damages extended beyond the tractor and included other property. And as I've discussed, the most hotly contested issue is this GPS auto steering assembly. We allege in the pleadings that the GPS and the auto steering assembly were not part of an original bargain, that the original bargain was the tractor on its own. But it was part of the tractor. They were part of the tractor. It was a part of the tractor that was ultimately delivered. However... Because it was already there on the tractor. As I understand it, and discovery was not conducted in this case in any significant degree, that once the purchase order is essentially entered into or once the parties come to an agreement as to what they want to buy, that the farm store goes out and looks for it. And according to my client, or my client's subreport, they made an agreement as to what they wanted. We want this tractor. We want these items. And the farm store said, sure, we can give that to you, and we can give it to you at this price, and you trade in your tractors, and then we'll deliver. But then they had to make another agreement because they couldn't find the tractor that they agreed to sell. And so we contend, and there's an affidavit in the record to this effect because the Fourth Amendment complaint was verified. And the problem is that the dismissal of the tort claims was before the court on a 2615 grounds. And therefore, the trial court should have taken all of the inferences, all of the well-pleaded facts, and construed them in my client's favor. And should have accepted as true that there were two bargains. Because in this particular case, I don't think there is any dispute about the applicable court law. I don't think either party disagrees as to which approach was adopted in Illinois. I think everyone will agree that it's the product bargain for approach. But what the trial judge did is he made a finding of fact, and that was wrong. He totally discounted an affidavit of Gary Sandrock who testified that the tractor and the GPS were separately bargained for. And he shouldn't have done that, and he should not have dismissed the tort claims on that basis. But even if we push past that, and even if we accept Judge Houtman's finding of fact that it was a single integrated transaction, that it was a fully integrated product with the tractor and the GPS. And, Your Honor, if I could point out, the GPS and auto steering unit, though it was physically connected, this was the type of system that could have been disengaged from the tractor and installed on another Case IH tractor. I mean, the obvious reason I'm asking that question is because of the Trans States Airlines versus Pratt, you know, case. They're talking about if it's bundled together or not when it's sold. And this was all bundled together in the tractor, right? It was bundled upon delivery. Yeah. Well, it was there. I mean, that was the problem with negotiating, wasn't it? It was already there. So your client said, I want this. And the other people have a tractor, and the tractor didn't have the GPS on the other one. Right. And there was further negotiation. So that's what they got, was a tractor with these things on it. Correct. But there were two separate bargains. There was a bargain without the GPS, and they had to renegotiate. Because they didn't have the other one. That's right. So they sold one tractor. They didn't sell two tractors. That's right. They sold one tractor. The tractor they sold had the GPS on the other stuff, right? That's right. Okay. But even if we look past this issue, other items of property were damaged, and we know this. And the defendants know it. And to date, and these other items of property, the CB radio, the antenna, all these additional parts and equipment that were stored inside the tractor, none of these came with the tractor. None of these were part of the original purchase price. But to date, neither defendant has provided any explanation or any convincing authority as to how or why these other items of property shouldn't accept this case from Mormon. Instead, what they do is they try to characterize them as incidental damages. But there is no incidental damages rule in Illinois. Have those items been pled in a complaint that's filed, or are they just set out in your fifth amended complaint that the judge didn't allow? Well, they are pled in the fifth amended complaint, which the judge did not allow. However, the predecessor complaints are defective, according to the trial judge, in that it's unspecified other property. And we can see that under in-ray Chicago flood, we do have to specify the items of additional other property that are claimed to have been damaged. But the standard here is a reasonable one, and I think the question for the court is can these claims be amended so that it cures this defect? And we know at this point that the claims can be amended to cure this supposed defect. How far does it cure it? If you have a toolbox in the thing to avoid the Mormon problem, what can you claim for damage? You know, Your Honor, I have not done an investigation. But, you know, in talking with the suburb or the farm, you know, I kind of laughed when he said fuel filters and things of that nature. But when you change oil on a tractor like this, it's like 26 gallons of oil. And so for replacing an air filter, an oil filter in the oil, it can cost hundreds of dollars. So if they have all these parts, just some of the other parts and equipment, it's hundreds of dollars. Just for the ratchet tools and the grease gun, these are also hundreds of dollars. I haven't done an accounting. In CB radios, I looked at it just because I expected the question, I suppose. But I don't happen to know what kind of CB was on there at this point. But they can range anywhere from, you know, a hundred to thousands of dollars as well. But I don't think that's the point. And I would like to step off my roadmap because I did not have time to point this case out because it's an Eastern District of Michigan case that came out in January. And this is a case of In re Ford Company Speed Control. And it's at 2009 Westlaw 3154021. Say that again. 2009 Westlaw 3154021. This is not a case in Illinois. It's a U.S. District Court case from Michigan. However, it does cite to Illinois law. And it cites to trans-state. And under the Section 3 entitled Illinois, it observes, it makes its own observation of Illinois law saying that whether tort recovery is permitted in Illinois and whether damage to other property occurred is a fact-intensive inquiry. And as a result, a complete dismissal where it's contested whether other property was damaged is not appropriate. And that's precisely what we have in this case. We allege that these items of other property were destroyed and therefore were out of mormon. So just having a jacket in the car can take you out of mormon. Or the tractor can take you out of mormon. The tractor, if a jacket's burned up, if it's in the cab. I don't think we have to decide the de minimis rule. And I think a de minimis rule... Is that your theory, though? That's not necessarily my theory because there's a United Airlines case that I cite in my brief and it's about defective roofing materials. And the court talks about whether there were de minimis property damages constituting other property and accepting it for mormon. And basically, defective roofing materials were there and the roof was damaged. And when the roof caved in, there were some... I'm sure what defendants would characterize as incidental property damage. Some damages to the... May I finish the thought? There were some damages to furniture and some other art and wall furnishings. In the context of a roof in an airport, the damages to the furniture and wall furnishings must have seemed relatively de minimis, but yet the court accepted it for mormon. Thank you, counsel. You may proceed, counsel. May I please report, counsel? My name is Garrett Bain. I represent C&H America in this commercial dispute. Just so the court is aware, I will be splitting my time with my co-defendant counsel from Perky's Farm. The appellant indicates that there is one question that is applicable to my claim, and that is, does the farm have a right to sue a tractor that causes other property damage? Well, that's an interesting question because it kind of puts the horse or the cart before the horse. This is a supplication case, and Westfield Insurance has to establish that it has standing to sue for the various kinds of property that it alleges were injured. So the question is, what did it pay for? Well, from reading the Fourth Amendment complaint and even the Fifth Amendment complaint, we don't know. It's not clear. And that's the plaintiff's pleading burden to indicate what it has standing to sue for under a subrogation theory. Thus, the Fourth Amendment complaint was properly dismissed on its standing grounds. It certainly has to count one and count two, which is strict liability and negligence, as does C&H. Now, count eight is an express warranty claim, and that persists in the trial court. So we'll leave that to the side. This case is going to continue when it goes back to the trial court after this 304A appeal. But then the question arises, well, if there was no standing alleged as to count one and count two as to other property under Mormon, which is the only way that count one and count two could persist, was that pleading deficiency fixed in the Fifth Amendment complaint? And the answer to that question is no, it was not. The same problem standing as to what did Westfield Insurance pay for is not addressed. There is a rather vague allegation, I believe it's the second or third paragraph in each complaint, indicating that Westfield Insurance paid for certain losses of its insurance. But we don't know what losses. And there was another statement made by Appellant's Counsel as to whether or not the tractor, in essence, is an integrated product. And Your Honor made mention of the Transtate v. Pratt & Whitney case. And in that case, an engine caught fire and caused damage to the engine and the airframe. And those were two different products that came to be part of the airplane that was purchased by the party and then transferred, and ultimately it was the fire and the claim was made that they were separate products. And the Transtate court rejected that approach and looked at the bargaining for approach and decided that the integrated product was the entire airplane itself. And I think that same approach is applicable here to find that the tractor included this GPS auto-steer component. It was one tractor. It was part of a single negotiation process and a single purchase order. Possibly the Sandrock Farms didn't plan to have the auto-steer when they first started the negotiations, but at the end of the negotiations, the auto-steer was part of the product and it was an integrated product. So based upon that approach, dismissal of Count 1 and Count 2 as to my client was proper because there was no standing to avoid the economic loss doctrine. And the Fifth Amendment complaint was properly, the leave sought to file that Fifth Amendment was appropriately denied and the district court did not abuse its discretion when it denied that motion for leave. I really don't have any further points to make unless the court has any further questions. Thank you, Counselor. Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the Court. Mr. Kesky. Counsel. My name is Troy Lundquist and with me at the Counsel table is my partner, Stacey Shelley, and collectively we represent Berkey's Farm Store. As Mr. Boehm set forth, there are a number of issues which we feel address both of us as defendants here and there's an overlap of those issues. There are a few other issues, although not spoken about today in the oral argument by counsel for the plaintiff, but that are touched on in the briefs that I believe apply solely to my client with regard to the warranty issues. With regard to the issues of overlap, the trans-state application and the economic loss doctrine, I would simply concur with everything that Mr. Boehm has set forth and adopt that on behalf of our client as well. There's one point that I do want to touch on with regard to... Can you have anything, aside from a standing issue, can you have anything like a jacket or something like that on the cab of a tractor and that takes it out of Mormon? Well, I think that's a very interesting question. I know you asked that of the plaintiff. At the onset, it seems to be plaintiff's position, although I can't quite decipher it, that if you have a jacket or a toolbox, automatically then you're now taking out of the context of the trans-state decision, and you can all of a sudden now pursue a theory in court for the entire loss. And although it's not been stated here, that, as we understood it, was the argument being made in the court below. I think it was properly rejected. So we have the standing issue to start with, and although I don't think Judge Houtman announced a de minimis rule per se, as it's been suggested here by the plaintiff, there has to be at least some de minimis discussion as part and parcel of this. The mere fact that there was something else contained within the product that was destroyed along with it does not take it out of the context of the bar to suing for these damages in tort. And I think that the important thing here is the plaintiff is not left without a remedy. That bears mention because if you read the plaintiff's brief, much of what has been argued is that the plaintiff has been denied their day in court, that justice was not served here. We have to remind ourselves there is still a case pending right now. The plaintiff not only had the opportunity to present six different complaints, the original one and four amendments that were filed, a fifth that was proposed and rejected, so six different complaints to the court below, but also has a count still pending in the court below. So justice was done. The plaintiff has not only had their day in court, but continues to have it in court and is pursuing the remedy that the Supreme Court has said is available to them for the losses that they have pled. And that's under the breach of warranty provisions against Case IH. Is it merely value that, in your opinion, decides whether or not Moorman attaches? Whether, I mean, if it's a jacket, as Justice Carter indicated, you know, does that rise to the level of other property or does it have to be a mink coat? Or are you just saying, you know, if it was contained inside, you're not going to be allowed to recover under a theory of tort? Our position, Your Honor, is that value does not matter here. It's contained as part and parcel of that product. It's the same concept that the Supreme Court talked about in announcing the trans-state decision, which followed Moorman and ultimately overruled in part the Vaughan decision. And it said it's the benefit of the bargain. It's a single combined product that's fully integrated. I think it has to be presumed in this discussion that if something like this has a problem and catches on fire, it might take something with it. It might take a fire extinguisher with it. It's certainly going to take with it the oil and the gas that's in it. And we can't imagine, as we sit here, that the Supreme Court thought that that meant you could all of a sudden set trans-state aside. So we have a fully integrated product. We have one sale, as Justice Carter pointed out. There were not two different tractors, two different deals. Despite plaintiff's suggestion here today that his contention that there were two bargains should be accepted as true, and I have no quarrel with the standard. All well-pled facts are deemed admitted for purposes of the motion. But when you attach exhibits to the complaint, as plaintiff did, and they attach the purchase order, that is now inconsistent with some of those allegations. We have one purchase order. We have one product that had all of these parts as part of it. There was one benefited, one bargained sale. And that puts us squarely within the mandates and the dictates of the trans-state decision. The other areas of the case that deal solely with my client, Judge Hoffman was correct in dismissing with prejudice the breach of warranty claims and finding that the disclaimer of warranties, all express and implied warranties being disclaimed was appropriate. We're asking that that be affirmed. That was a correct decision based on the facts  And it essentially started by plaintiff's argument that the dealership was somehow bound by the express warranty that was extended by the manufacturer. That's the very warranty that the case continues under in the court below. They're continuing to sue case. And plaintiff has argued in their brief that the mere fact that case chose to mention the word dealer in their warranty, if work needs to be done, it must be taken to a Case IH dealer. That somehow that means that the dealership is then bound by the warranty. The court below saw through that and dismissed that out of hand. There's no basis in that document for the dealer to become bound by the manufacturer's warranty. We all know that Berkey's Farm Store did not design or manufacture the tractor and that's undisputed. The other issues that the court below correctly determined were the disclaimers of warranties, the express and imply. And I think a case that squarely addresses these issues is one that your honors have decided. Justice O'Brien and Justice Carter were both involved in the ROW window case from here in the 3rd District. Counsel, you have one minute. Thank you. And I will simply refer to the reasoning that was set forth there. We have a conspicuous disclaimer. It stands in all capital letters with a set apart line right next to it and it's right on the page where the signature is. In fact, it's right above the signature line. In the ROW windows case, we had a disclaimer that was within a catalog and then another one that was part of an invoice. There wasn't a lot of discussion about whether it was signed or not. But contrary to what's been asserted by the plaintiff here, we have a signature right next to the disclaimer of warranties which is conspicuous and meets the exact criteria set forth by the UCC. I'd be happy to address any questions that the panel may have. But I would thank you for your consideration of our position and ask that Judge Hoffman be affirmed in his decision in all respects as to the dealership. Thank you, Counsel. Thank you, your honors. Counsel, you may reply. Thank you. Thank you, your honor. I had planned for this to go somewhat differently, but I will. And I apologize if I'm jumping around, but I'll try to address everything in lieu of what was argued. CNH contends that this case was dismissed on standing grounds and that's just not a fact. This case was dismissed because Judge Hoffman found that the tractor and the auto steering assembly, as a matter of fact, were a single integrated product and they were bargained for in a single integrated transaction. We think that was improper. But we did address the standing issue below, and we even suggested to the court that the question is not whether the Fifth Amendment complaint passes muster, although it certainly is helpful for the analysis. The question is can we cure all of these claim deficiencies, and we can, and we argued to the court that under both of the applicable statutes of limitations, Gary Sandrock and Sandrock Farm can be added, and those statutes of limitations don't run until October of 2011. So theoretically, they could sue in their own right for these items of other property, and they have agreed to be joined in this particular case. I don't think that there's any dispute or there shouldn't be that Joinder is property. Are they joined yet? Pardon me? Are they joined now? They are now. We would have joined them had we been allowed to do so. Well, right now they're not part of this case. Pardon me? They're not part of this case right now. Correct. In addition, Your Honor was asking questions about was this one tractor or was this two tractors? But I don't think respectfully that that's the right question, and the reason that I say that, Your Honor, is because the court specifically addressed that in trans-state, and they specifically said, and I couldn't find all of it, but the question in trans-state was could this airplane and engines ever constitute two products, even though they are physically connected? And I think ultimately the court said in this particular case, no, but they did not foreclose the possibility that if they were separately bargained for, that they would be, that they could be two separate products, specifically in that case. Had a little more time. Well, don't they say that we find it apt, therefore, that the proper starting point in the separate product determination is the contract, and the relevant inquiry is what is the object of the contract or bargain that governs the rights of the parties? In this case, there was one final contract for a tractor that had the GPS and the other things on it, right? Right, but we allege that the handwritten notations with regard to the autopilot, which it says autopilot in handwriting, and on the dealer's invoice it says, Allen, auto steer was added, and then it includes a notation for the price, which we contend was they were backing out the price after adding that. How many contracts for a tractor were there? One. But I'd like to address Berkey's point that we had a remedy. If Your Honors read the allegations, we're pleading in the alternative. We're saying, on the one hand, that this tractor was defectively manufactured, and the defective manufacturer caused the fire and caused the damages and the damages to other property. On the other hand, we're saying that Berkey's Farm Store, in the seven times that they repaired this, in the first six months that we had it, they created the defect, they had knowledge of the defect. And the trial court is saying, wait a second, you can't sue them in tort. So if we can't sue them in tort, the underpinning theory of Mormon is that our remedy lies in contract. But the trial court is saying we can't sue them in contract. Isn't that one of the problems with the Mormon doctrine in Illinois? In fact, the Supreme Court of Illinois, there are cases where after they've developed this Mormon doctrine, in fact, there are cases where you're barred by Mormon from suing in tort, and yet you really don't have a viable contract case. There are cases from the Supreme Court on that point. Isn't that correct? That is correct. That happens. But that shouldn't happen here. In this particular case, I just want to point out that the warranty to which they refer doesn't merely mention the dealer. In fact, it imposes obligations on the dealer, and the dealer is a signatory. The dealer was obliged. The dealer must. The dealer shall do these things. They shall explain the safety features. They shall explain the warranty. And in fact, although we were not allowed to do any discovery, I strongly suspect that there is a contract between C&H America and Berkey's Farm Store. I'm glad you're getting something else, though. I am. Thank you. Thank you, Counsel. Thank you all for your arguments. We will stand in the recess for the day and come back tomorrow. We will take this case under advisement, and we'll render a decision with dispatch. Thank you.